[Cite as *State v. Bonner*, 2023-Ohio-4003.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio                                       Court of Appeals No.  E-22-040

    Appellee                               Trial Court No.  2021-CR-0175

v.

Tamara Bonner                              **DECISION AND JUDGMENT**

    Appellant                              Decided:  November 3, 2023

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Kristin R. Palmer, Assistant Prosecuting Attorney, for appellee.

Meredith A. O'Brien, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} This is an appeal filed by appellant, Tamara Bonner, from the August 29,

2022 judgment of the Erie County Court of Common Pleas.  For the reasons that follow,

we affirm.

{¶ 2} Bonner sets forth five assignments of error:

1. Defendant-appellant Tamara Bonner (hereinafter "Bonner") was denied due process of law when her speedy-trial rights were denied in violation of U.S. Const. Amend. VI and XIV, Ohio Const. Art 1, Section 10 and R.C. 2945.71 et seq. regarding Count 3, domestic violence.

2. The actions of defense counsel at trial deprived Bonner her right to effective assistance of counsel and a fair trial pursuant to U.S. Const. Amend V and XIV and Ohio Const. Art. 1, Section 10 and Strickland v. Washington.

3. Bonner's convictions of assault and domestic violence are against the manifest weight of the evidence where the state failed to prove beyond a reasonable doubt that Bonner did not act in self-defense.

4. Bonner's conviction of burglary is against the manifest weight of the evidence produced at trial.

5. Bonner's convictions of assault and domestic violence violate her due process as the state's evidence produced at trial was constitutionally insufficient to sustain a conviction based upon the stand [sic] of beyond a reasonable doubt (*State v. Walker*, 2021-1421)[.]  (Sic.)

## Background

{¶ 3} Bonner and L.A. were in a relationship which began in mid-2020, they became engaged in September 2020, and then lived together in Bonner's home in Columbus, Ohio, from October 2020 until February 2021, when they broke up. L.A. left Columbus and began living at her sister's ("sister" or "L.A's sister") home in Sandusky, Ohio. In April 2021, L.A. and Bonner briefly reconciled and Bonner stayed over with L.A., in sister's home.

{¶ 4} On the morning of April 11, 2021, Bonner looked at L.A.'s phone and discovered JPay[1] messages between L.A. and a man; the couple got into an argument. Bonner left sister's home, but before long she returned and was met outside by L.A., and the couple continued their argument.

{¶ 5} According to Bonner, the following events occurred. Her cell phone and car keys were taken by L.A., who then retreated into sister's home. Bonner followed, pleaded for the return of her belongings so that she could drive back to Columbus, but L.A. refused. In due course, L.A.'s sister, who had been asleep upstairs, woke up and came downstairs, then went outside and spoke with Bonner. Sister went back inside of the home, as did Bonner. A physical altercation or "tussle" occurred between Bonner and L.A., where a bat and/or hammer were wielded by L.A. and/or sister. Bonner claims she

---

[1] JPay is an app which people use to communicate with and send money to incarcerated individuals.

3.

was hit on the back with the bat. Sister called her mother ("mother") and L.A. called 911.

{¶ 6} On the call to 911, L.A. asked for help from the police because a female would not leave and just attacked her. A few minutes later, mother and Sandusky police officers arrived at the home; each officer wore a body camera ("body cam"). As the officers walked toward the home, sister pushed Bonner out of the home, Bonner grabbed L.A.'s head and hair with both hands, pushed L.A.'s head downward, and would not let go of L.A.'s hair. Bonner was forced by officers to let go of L.A.'s hair; Bonner was arrested. L.A. told officers that Bonner was her ex-girlfriend who lived in Columbus, and Bonner put L.A.'s kids out and left them homeless. Bonner told officers she was with L.A. at sister's home for a week.

{¶ 7} On July 15, 2021, Bonner was indicted on Count 1 - aggravated burglary, a first-degree felony, and Count 2 - assault, a first-degree misdemeanor. Bonner pled not guilty, and subsequently filed five motions for continuances.

{¶ 8} On June 8, 2022, Bonner was indicted on Count 3 - domestic violence, a fourth-degree felony.[2] On June 22, 2022, Bonner filed a motion to dismiss Count 3, arguing her speedy-trial right was violated. The state countered that the tolling events as to Counts 1 and 2 extended to Count 3. On July 20, 2022, the trial court issued its judgment entry in which it agreed with the state and denied Bonner's motion to dismiss.

---

[2] The degree of the offense of the domestic violence charge was enhanced due to Bonner's prior domestic violence conviction, in 2008.

4.

{¶ 9} On July 26, 2022, a jury trial commenced in the Erie County Court of Common Pleas. The state presented its case on all three counts, which included witness testimony and the officers' body cam footage as evidence. After the state rested, defense counsel moved for acquittal pursuant to Crim.R. 29; the motion was denied. The defense offered testimony and evidence, including Bonner's testimony that she acted in self-defense. Thereafter, the jury found Bonner guilty of burglary (a lesser included offense and a fourth-degree felony), assault and domestic violence.

{¶ 10} On August 26, 2022, at the sentencing hearing, the assault and domestic violence charges merged, and Bonner was ordered to serve 18 months in prison on the domestic violence charge and 18 months in prison on the burglary charge, with the sentences to run concurrently. Bonner filed her notice of appeal on September 26, 2022.

{¶ 11} Before we address Bonner's assignments of error, we note that virtually all of the cases cited in her amended brief and reply brief do not comply with Loc.R. 10(C) of the Sixth District Court of Appeals. That rule states:

(C). Citations. * * * Case citations and other legal authorities must appear in the text of the argument after the point of law for which the case or legal authority is cited, * * * and must include the volume and page number of the case, **and the particular page or paragraph number where the point of law is found**. **Citations shall conform to the Writing Manual** A

Guide to Citations, Style, and Judicial Opinion Writing issued by the

Supreme Court of Ohio (2013). (Emphasis added.)

{¶ 12} In her briefs, Bonner failed to include the page or paragraph number where her point of law was located, and her citations did not conform with the recommended citation style set forth in the Supreme Court of Ohio's Writing Manual. We have provided the correct citations, except those contained within quotations by Bonner.

### First Assignment of Error

{¶ 13} Bonner argues her due process and speedy-trial rights were denied as to Count 3. She submits that R.C. 2945.71 through 2945.73 codify an accused's statutory right to a speedy-trial in Ohio, and provide that an accused charged with a felony must be brought to trial within 270 days after arrest, but the lapse of time between her arrest and the domestic violence charge was more than 270 days. Bonner asserts the trial court erred in denying her motion to dismiss Count 3.

### Trial Court's Judgment Entry Denying Bonner's Motion to Dismiss Count 3

{¶ 14} In its judgment entry, the trial court set forth, inter alia:

In general, Ohio law is divided into two (2) categories for tolling purposes. One being a 'Waiver' of Speedy Trial, which has to be done knowingly, intelligently, and voluntarily. It is a tactical choice to waive it. The other category is the 'Statutory' tolling provisions based on filings and/or actions of a defendant. These are not always a tactical choice. Case

6.

law holds that the first category - 'Waiver' - would not apply to new charges because * * * the waiver was not made knowingly, intelligently and voluntarily as to the new count(s). Yet, as for the other category - 'Statutory' tolling - it may apply depending on the filing itself. For example, a filed motion to suppress evidence [sic] would not apply to the new count because it is a tactical motion filed by a defendant for the pending count(s); not for the new count(s). Whereas, a continuance motion filed by a defendant on the pending count(s) is not a tactical decision, and it would apply to the new count(s).

{¶ 15} The trial court found, in denying Bonner's motion to dismiss, that her "motions were all for continuances; not tactical motions. Thus, they are attributable to Count 3 for tolling Speedy Trial."

**Speedy-Trial Statutes**

{¶ 16} R.C. 2945.71, R.C. 2945.72 and R.C. 2945.73 are the speedy-trial statutes relevant to Bonner's case. We note that new versions of these statutes became effective in April 2023. R.C. 1.48 provides that "[a] statute is presumed to be prospective in its operation unless expressly made retroactive." Upon review of the new versions of the statutes, there is no mention that they were made retroactive. Therefore, the new versions of the statutes operate prospectively. As such, the versions of the statutes in effect during Bonner's trial court proceedings apply ("previous version").

7.

**Speedy-Trial Statutes Cited by the Parties**

**R.C. 2945.71 (previous version)**

{¶ 17} The relevant portions of this statute provide:

* * *

(B) Subject to division (D) of this section, a person against whom a charge of misdemeanor * * * is pending in a court of record, shall be brought to trial as follows:

* * *

(2) Within ninety days after the person's arrest * * * if the offense charged is a misdemeanor of the first * * * degree[.]

(C) A person against whom a charge of felony is pending:

* * *

(2) Shall be brought to trial within two hundred seventy days after the person's arrest.

(D) A person against whom one or more charges of different degrees, whether felonies, misdemeanors, or combinations of felonies and misdemeanors, all of which arose out of the same act or transaction, are pending shall be brought to trial on all of the charges within the time period required for the highest degree of offense charged * * *.

8.

**R.C. 2945.72 (previous version)**

{¶ 18} The relevant portions of this statute provide:

The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:

* * *

(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion[.]

**R.C. 2945.73 (previous version)**

{¶ 19} The relevant portions of this statute provide:

* * *

(B) Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code.

* * *

(D) * * * When an accused is discharged pursuant to division (B) or (C) of this section, such discharge is a bar to any further criminal proceedings against him based on the same conduct.

**Speedy-Trial Cases Cited by the Parties (in Chronological Order)**

**1998 -** *State v. Adams* **– Speedy-Trial Time Waiver**

{¶ 20} In *State v. Adams*, 43 Ohio St.3d 67, 538 N.E.2d 1025 (1998), syllabus, the Supreme Court of Ohio held "[w]hen an accused waives the right to a speedy trial as to an initial charge, this waiver is not applicable to additional charges arising from the same set of circumstances that are brought subsequent to the execution of the waiver." The court reasoned the speedy-trial waiver for the initial charge could not have been made knowingly, voluntarily, and intelligently as to subsequent charges. *Id.* at 69.

**2000 -** *State v. Homan* **– Pretrial Motion to Suppress**

{¶ 21} In *State v. Homan*, 89 Ohio St.3d 421, 732 N.E.2d 952 (2000), paragraph two of the syllabus,[3] the Supreme Court of Ohio held that "[w]hen a criminal defendant files a pretrial motion [to suppress] and the state later files against the defendant additional, related criminal charges, R.C. 2945.72(E) does not extend the time within which the defendant must be brought to trial on those additional charges." The court stated "that tolling was not intended to occur for charges filed subsequent to the defendant's motion filing." *Id.* at 428.

**2004 -** *State v. Overholt* **– Awareness of Facts**

{¶ 22} In *State v. Overholt*, 9th Dist. Medina No. 03CA0119-M, 2004-Ohio-4969, the appellate court found that new charges brought against the defendant, after the 270-

---

[3] *Homan* was superseded by statute on other grounds, as stated in *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155.

10.

day speedy-trial period had expired, stemmed from the same facts as the original charges, and the state was aware of the facts giving rise to the new charges at the time the original charges were filed. *Id.* at ¶ 11-12. The court, citing *Homan*, held "[a]ny pretrial motions filed by Appellant prior to the State's issuance of the supplemental indictment would not extend the time within which Appellant was to be brought to trial" on the new charges. *Id.* at ¶ 12.

**2008 - *State v. Blackburn* - Waiver (Tactical) versus Statutory Tolling (Nontactical)**

{¶ 23} In *State v. Blackburn*, 118 Ohio St.3d 163, 2008-Ohio-1823, 887 N.E.2d 319, the Supreme Court of Ohio observed the narrow issue before it was whether to include delays, resulting from motions defendant filed in the second case, to a third case, when calculating speedy-trial time under R.C. 2945.71. *Id.* at ¶ 2, 12.

{¶ 24} The court observed the concepts of a speedy-trial waiver and the tolling provisions in R.C. 2945.72 are separate and distinct, and affect speedy-trial calculations in different ways. *Id.* at ¶ 16. "A waiver is an intentional relinquishment of a known right * * * [and] '[a]s with other fundamental rights, a defendant can waive the right to a speedy trial.'" *Id.* at ¶ 17, quoting *Adams* at 69. Whereas "R.C. 2945.72 provides circumstances that extend or toll the time within which an accused must be brought to trial but do not involve an intentional relinquishment of the fundamental right, [such as] R.C. 2945.72(H) [which] extends the speedy-trial time for '[t]he period of any continuance granted on the accused's own motion.'" *Id.* The court set forth "'[a] waiver

relinquishes the right, at least until the waiver is withdrawn. Tolling doesn't waive the speedy-trial right, however.'" *Id.* at ¶ 18, quoting *State v. Kerby*, 162 Ohio App.3d 353, 2005-Ohio-3734, 833 N.E.2d 757, ¶ 62 (2d Dist.).

{¶ 25} The *Blackburn* court further explained "the statutory tolling of speedy-trial time under R.C. 2945.72 * * * occurs by operation of the statute." *Id.* at ¶ 19. So, when a defendant files a motion to suppress, which is a tactical decision, the speedy-trial time is automatically tolled. *Id.* at ¶ 20. But, when a defendant files a motion for continuance so new counsel could prepare the case, and the motion is granted, the speedy-trial time is automatically extended under R.C. 2945.72(H). *Id.* at ¶ 19. "Unlike waiver, statutory tolling does not necessarily require an informed, tactical decision." *Id.*

{¶ 26} The court held "[i]n calculating the time within which a criminal defendant must be brought to trial under R.C. 2945.71, periods of delay resulting from motions filed by the defendant in a previous case also apply in a subsequent case in which there are different charges based on the same underlying facts and circumstances of the previous case." *Id.* at syllabus.

**2022 - *State v. Sanford* - Inquiry - What and When Information was Known**

{¶ 27} Subsequent to the *Blackburn* case and the trial court's decision denying Bonner's motion to dismiss, the Supreme Court of Ohio released *State v. Sanford*, 170 Ohio St.3d 204, 2022-Ohio-3107, 210 N.E.3d 488.

12.

**{¶ 28}** The *Sanford* court observed that "we have made clear that a new speedy-trial clock does not start each time the state brings a new charge based on additional evidence that might strengthen the state's original case. But we have also said that the speedy-trial statute does not preclude the state from bringing new charges based on information that was not available to it at the time the original charges were filed." *Id.* at ¶ 28-29.

**{¶ 29}** The *Sanford* court set forth "[t]he proper inquiry is to consider whether at the time the initial charges were filed, the state had all the information necessary to bring additional related charges." *Id.* at ¶ 29. This question "will necessarily require a fact-dependent determination." *Id.* at ¶ 30. "If the state had [all of] the necessary information at the outset, then the additional charges are subject to the same speedy-trial period as the original charges. If not, then the additional charges will trigger a new speedy-trial clock." *Id.* at ¶ 29.

**{¶ 30}** The *Sanford* court did not discuss tactical versus non-tactical motions, nor did it explore the concepts of a speedy-trial waiver opposed to tolling under R.C. 2945.72. Rather, the court only focused on what information the state knew, and when.

**Bonner's Arguments**

**{¶ 31}** Bonner argues, pursuant to the *Overholt* case, when a new charge is brought, the state is subject to the speedy-trial timetable of the original charge, if the new charge arose from the same facts as the original charge. She also refers to the *Sanford*

13.

inquiry, and submits that "the answer to the inquiry is yes, the State of Ohio had the information at the time of the Defendant's arrest to support the additional charge of Domestic Violence as their relationship [L.A. and Bonner's] was referenced in State's Exhibit 1 [the body cam videos]." Bonner acknowledges that R.C. 2945.72(E) provides pretrial motions filed by the accused may extend speedy-trial time, but she argues this provision does not apply to extend the time in which the accused is to be brought to trial on an additional, *related* charge brought by the state after the filing of the motion.

{¶ 32} Bonner asserts the trial record clearly shows that the state knew Bonner and L.A. were "family or household members" when Bonner was arrested, which was the information needed to support the domestic violence charge. She observes the state filed Count 3 about 11 months after Counts 1 and 2 were brought, and offered no reason for the delayed filing, yet the trial court denied her motion to dismiss on the authority of *Homan* and *Blackburn*, as suggested by the state. Bonner insists *Blackburn* does not apply to her case.

**State's Arguments**

{¶ 33} The state relies on *Blackburn*, where the court distinguished the *Adams* and *Homan* cases. The state claims *Adams* does not apply to Bonner's case, as Bonner did not waive her speedy-trial rights. The state also claims *Homan* does not apply to Bonner's case, as "[u]nlike Homan's tactical decision to file a motion to suppress,"

Bonner filed motions for continuances, which were not tactical, since the motions were filed to give her counsel more time to prepare for the case.

{¶ 34} The state asserts if the *Blackburn* principles are applied to Bonner's case, the periods of delay resulting from the motions she filed before Count 3 was brought, also apply to Count 3. The state contends the *Blackburn* court explained that these were automatic tolling events which operated to protect the state's ability to adequately prosecute people who have committed offenses.

## Law

## Application of the *Sanford* Decision to Bonner's Case

{¶ 35} In *State v. Lynn*, 5 Ohio St.2d 106, 214 N.E.2d 226 (1966), paragraph two of the syllabus, the Supreme Court of Ohio held that "[t]he doctrine of [a recently released] case is applicable to cases pending on appeal at the time of its pronouncement." The court explained "[r]etrospective application of a decision would require application of the new ruling to a conviction which had become final. The term, 'final conviction,' when used in relation to the doctrine of retrospective application of a judicial ruling means a conviction in which the accused has exhausted all his appellate remedies or as to which the time for appeal as of right has expired. In other words, the application of a new rule of law to a pending appeal is not retrospective as that word is used in relation to the effect of a new decision on a pending case." *Id.* at 108. *See also State v. Evans*, 32

Ohio St.2d 185, 186, 291 N.E.2d 466 (1972) and *State v. Laws*, 10th Dist. Franklin No. 72AP-398, 1980 WL 353796, *5 (Nov. 20, 1980).

{¶ 36} Moreover, in *State v. Costello*, 6th Dist. Lucas No. L-22-1004, 2022-Ohio-3354, ¶ 9, this court set forth that "'[a]s an intermediate appellate court, we are bound to follow precedent set by the Supreme Court of Ohio and we cannot issue a decision in conflict with a decision of the Supreme Court that has not been reversed or overruled.' *State v. Bruce*, 10th Dist. Franklin No. 21AP-376, 2022-Ohio-909, ¶ 39-40, quoting *State v. Tatom*, 10th Dist. [Franklin] No. 17AP-758, 2018-Ohio-5143, ¶ 24."

**Domestic Violence Statute**

{¶ 37} R.C. 2919.25 states, in relevant part:

(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.

* * *

(D)(3) * * * [I]f the offender previously has pleaded guilty to or been convicted of domestic violence * * * a violation of division (A) * * * this section is a felony of the fourth degree * * *.

* * *

(F) As used in this section * * * of the Revised Code:

(1) "Family or household member" means any of the following:

(a) Any of the following who is residing or has resided with the offender:

(i) A spouse, a person living as a spouse, or a former spouse of the offender;

* * *

(2) "Person living as a spouse" means a person who * * * has cohabited with the offender within five years prior to the date of the alleged commission of the act in question.

**Standard of Review on Appeal**

{¶ 38} "'Appellate review of speedy-trial issues involves a mixed question of law and fact.' * * * The trial court's findings of fact are entitled to due deference if they are supported by competent, credible evidence, however, the appellate court will independently review whether the trial court correctly applied the law to the facts of the case." (Citations omitted.) *Toledo v. Burns*, 6th Dist. Lucas No. L-13-1017, 2014-Ohio-1669, ¶ 9. Moreover, courts must "strictly construe the speedy[-]trial statutes against the state * * *." *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 661 N.E.2d 706 (1996).

**Analysis**

{¶ 39} Upon review, we observe that two issues are relevant to whether Bonner's speedy-trial right was violated with respect to the domestic violence count. The first issue is when the clock on the domestic violence count began to run. The second issue is

17.

whether any of the tolled time from Bonner's motions for continuances applied to the clock on the domestic violence count.

**First Issue**

{¶ 40} Bonner claims that all of her charges arose from the same facts, and the state had the information at the time of her arrest to support the domestic violence charge, so that charge is subject to the speedy-trial timetable of the original charges. Bonner relies on, inter alia, the *Sanford* case. We find, on the authority of the *Lynn* case, that the *Sanford* decision, which was announced during the pendency of Bonner's appeal, is applicable to Bonner's case.

{¶ 41} Our review of the law as applied to the facts of Bonner's case reveals that the *Sanford* decision addresses the issue of when the speedy-trial clock on Bonner's domestic violence charge began to run. An examination of the trial court record shows that in the body cam videos, L.A. told the responding officers that Bonner was her ex-girlfriend and Bonner put L.A.'s kids out and left them homeless, while Bonner told officers that she had stayed with L.A. for the past week in sister's home. In addition, Officer Cameron Greenawalt testified that during the investigation of the incident and preparation of the police report, he learned Bonner and L.A. had been living together.

{¶ 42} Based upon the foregoing, we find Bonner established that all of the charges against her arose out of the same April 11, 2021 incident, and when the burglary and assault charges were initially brought, the state had the information necessary to also

18.

bring the domestic violence charge. We further find, on the authority of *Sanford*, the clock on Bonner's domestic violence charge began to run at the same time as the speedy-trial clock for the original charges of assault and burglary. Consequently, the lapse of time between Bonner's arrest and the domestic violence charge was more than 270 days.

**Second Issue**

{¶ 43} The state claims that Bonner's motions for continuances, which were filed before she was charged with domestic violence, extended the speedy-trial time for the domestic violence charge as the motions were automatic tolling events. The state relies on the *Blackburn* case.

{¶ 44} Bonner counters that R.C. 2945.72(E) provides pretrial motions filed by the accused may extend speedy-trial time, but this provision does not extend the time in which the accused is charged with an additional, related offense brought by the state after the pre-trial motions were filed.

{¶ 45} The record shows that Bonner's requests for continuances filed for the original counts of assault and burglary, were due to scheduling conflicts and counsel's need to investigate the case and produce discovery to the state. Bonner did not waive her right to a speedy trial, nor did Bonner file a tactical motion to suppress. Our review of the law, considering the facts of Bonner's case, leads to the conclusion that *Blackburn* speaks directly to the issue of whether the tolled time from Bonner's motions for continuances apply to the domestic violence count. We find that *Adams* does not apply,

19.

since Bonner did not waive her right to a speedy trial, and *Homan* does not apply because Bonner did not file a tactical motion to suppress. Moreover, we find Bonner's reliance on R.C. 2945.72(E) misplaced. That statute provides "[t]he time within which an accused must be brought to * * * trial, may be extended only by the following: * * * [a]ny period of delay necessitated by reason of a * * * motion * * * made or instituted by the accused[.]" R.C. 2945.72(E) makes no mention that the provision does not extend the speedy-trial time in which the accused is charged with an additional, related offense brought by the state after pre-trial motions were filed, as suggested by Bonner. Furthermore, we find, on the authority of the *Costello* case, that we are bound to follow the precedent set forth in *Blackburn*, which has not been reversed or overruled in any subsequent decisions of the Ohio Supreme Court, including *Sanford*.

{¶ 46} Therefore, we find, pursuant to *Blackburn*, that the continuances requested by Bonner as to the original charges were nontactical, and the tolled time from these requests applies to the speedy-trial clock on the later-filed domestic violence count. As such, the state has demonstrated that Bonner was not entitled to be brought to trial within the speedy-trial time limit. Thus, we find the trial court did not err when it denied Bonner's motion to dismiss the domestic violence count on speedy-trial grounds.

{¶ 47} Accordingly, Bonner's first assignment of error is not well-taken.

20.

## Second Assignment of Error

{¶ 48} Bonner argues her defense counsel's actions at trial deprived her of her right to effective assistance of counsel and a fair trial. Specifically, she contends her counsel: (1) failed to object to the body cam videos, on the bases of hearsay and relevancy; (2) failed to redirect her after her cross-examination, as to her confused or reluctant admission against her self-defense claim; and (3) failed to object to the presentation of her 2008 domestic violence conviction or to stipulate to the conviction, which allowed the state to present testimony as to the conviction and examine witnesses regarding Bonner's propensity for violence, which was highly prejudicial. Bonner submits that all of these errors, taken together, constitute ineffective assistance of counsel.

## Law

{¶ 49} In *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court established a two-step process for evaluating an allegation of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's

errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

{¶ 50} In other words, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 146, 538 N.E.2d 373 (1989), quoting *Strickland* at 694. The defendant's failure to demonstrate either deficiency or prejudice will defeat a claim for ineffective assistance of counsel. *Strickland* at 687. Thus, a reviewing "court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. * * * If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice * * * that course should be followed." *Id.* at 697.

{¶ 51} Further, "[j]udicial scrutiny of [trial] counsel's performance must be highly deferential." *Id.* at 689. "A fair assessment of [trial counsel's] performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* Due to "difficulties inherent in making the evaluation, a [reviewing] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant

must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" (Citation omitted). *Id.*

{¶ 52} Generally, debatable trial tactics "do not constitute a deprivation of effective counsel." *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995). Furthermore, "'[f]ailure to do a futile act cannot be the basis for claims of ineffective assistance of counsel, nor could such a failure be prejudicial.'" (Citation omitted.) *State v. Henderson*, 8th Dist. Cuyahoga No. 88185, 2007-Ohio-2372, ¶ 42.

**First Claim - Failure to Object to Body Cam Videos**

{¶ 53} Bonner claims the two body cam videos played by the state were offered to prove the truth of the matter asserted, which is hearsay and were not offered to explain the police investigation of the incident. She insists her counsel should have objected to the admission of the videos on hearsay and unfair prejudice grounds. She further argues the record reflects actions which transpired before the police arrived, so the events depicted on the videos are highly prejudicial and incomplete. She cites to Evid.R. 801(C) and *State v. Thompson*, 6th Dist. Lucas No. L-19-1289, 2021-Ohio-1344.

{¶ 54} The state counters that statements which "are not offered to prove the truth of what was said do not qualify as hearsay. *State v. Davis*, 62 Ohio St.3d 326, 343, 581 N.E.2d 1362 (1991)." The state maintains that "none of the statements on the body cam videos were offered at trial to prove the truth of the matter asserted. Instead, the videos were offered to show what happened as the police arrived at the scene, including

23.

Bonner's assault of [L.A.]." Alternatively, the state argues that even if the videos did include hearsay, the statements made by Bonner, L.A., sister and mother were excited utterances and admissible under Evid.R. 802.

{¶ 55} The state also submits that "[u]nder Evid.R. 403(A), 'evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.'" The state claims the probative value of the videos is apparent, as a burglary, assault, and domestic violence occurred on the footage as the police were arriving at the scene. In addition, the state contends the trial testimony was clear that the videos did not depict the entire altercation which occurred. The state insists that Bonner's "conclusory argument on this issue does not demonstrate that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Also, the state notes that "'[t]actical decisions, such as whether and when to object, do not ordinarily give rise to a claim for ineffective assistance of counsel.' *State v. Johnson*, 112 Ohio St.3d 210, 2006 Ohio-6404, 858 N.E.2d 1144, ¶¶ 139-140."

**Law**

{¶ 56} Evid.R. 801(C) states that "'[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement."

**{¶ 57}** In *Thompson*, 6th Dist. Lucas No. L-19-1289, 2021-Ohio-1344, at ¶ 33, 42, the appellant argued that statements offered by the state at his trial were impermissible hearsay, as the statements proved the matters asserted. The state countered the statements were not hearsay, as they were offered for the purpose of explaining the steps taken by the police in the investigation. *Id.* at ¶ 33. This court observed that "[w]hile hearsay may not be permitted, an out-of-court statement is not hearsay and is admissible if it is offered for a different purpose. *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 169." *Thompson* at ¶ 35. This court also noted that the *Beasley* court set forth:

> "Testimony to explain police conduct is admissible as nonhearsay if it satisfies three criteria: (1) the conduct to be explained is relevant, equivocal, and contemporaneous with the statements, (2) the probative value of the statements is not substantially outweighed by the danger of unfair prejudice, and (3) the statements do not connect the accused with the crime charged." *Beasley* at ¶ 172.

*Thompson* at ¶ 35. This court found the contested statements were not hearsay, as "[e]ach statement was either introduced to explain the conduct of the officers, an excited utterance, or was not a statement offered to prove the truth of the matter asserted." *Id.* at ¶ 42.

**{¶ 58}** Regarding an excited utterance, Evid.R. 803 provides:

25.

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \*

(2) A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

{¶ 59} In *State v. Richardson*, 6th Dist. Lucas No. L-07-1214, 2010-Ohio-471, ¶ 62, this court set forth:

In order "[f]or an alleged excited utterance to be admissible, four prerequisites must be satisfied: (1) an event startling enough to produce a nervous excitement in the declarant, (2) the statement must have been made while still under the stress of excitement caused by the event, (3) the statement must relate to the startling event, and (4) the declarant must have personally observed the startling event." (Citations omitted.)

**Analysis**

*Bonner's Hearsay Argument*

{¶ 60} Upon review of Bonner's argument, the body cam videos and the applicable law, we find her argument is without merit. In the videos, it is evident that statements were made during or immediately after a startling and disconcerting incident, a physical fight, which was sufficient to produce a nervous excitement in the declarants

26.

while they were still under the stress of excitement caused by the fight, and the statements concerned the fight. It is also apparent that the declarants personally observed the fight, as most of the declarants were involved in the fight.

{¶ 61} We therefore find the statements in the videos meet the requirements of excited utterances, which are not excluded by the hearsay rule, and no error occurred with respect to the admission of the videos. This, if Bonner's counsel had lodged an objection to the admissibility of the videos, the objection would have been unsuccessful. In addition, we find Bonner has not overcome the presumption that, under the circumstances, her counsel's decision not to object to the admission of the videos might be considered to be sound trial strategy.

*Bonner's Unfair Prejudice Argument*

{¶ 62} Upon review of Bonner's argument and the applicable law, we find no merit to her argument. Bonner does not allege any specific prejudice that happened to her as a result of counsel's alleged ineffectiveness nor does she argue or show there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different. In addition, Bonner does not refer to parts of the record or offer any citation to legal authority in support of her argument. Rather, Bonner offers a conclusory statement that the events on the videos are highly prejudicial and incomplete because the record shows events occurred before the police arrived.

27.

{¶ 63} We conclude that Bonner failed to satisfy both steps in *Strickland*, as she did not establish that her counsel erred by failing to object to the body cam videos on the basis of hearsay, nor did she sustain her burden of demonstrating prejudice by showing a reasonable probability that the outcome of the trial would have been different.

**Second Claim - Failure to Redirect Bonner Regarding Her Self-Defense Claim**

{¶ 64} Bonner notes that at trial, she testified on direct examination that she was attacked by L.A. and sister, who had weapons, while she was unarmed and acted in self-defense. Bonner explains that on cross-examination, she was questioned about the facts leading up to her re-entering sister's home, and she testified that she was let back into the home by sister so that she, Bonner, could be jumped by L.A. and sister. Bonner observes next, the prosecutor showed the body cam video, where she was pushed by sister, Bonner pushed sister back, then Bonner grabbed L.A.'s hair. Bonner describes that she was confronted about whether she was acting in self-defense when she grabbed L.A.'s hair, and Bonner ultimately answered that she was not. Cross-examination ended.

{¶ 65} Bonner contends her attorney should have redirected her, for clarification to the jury, regarding her acting in self-defense, as she was the last witness to testify at the trial and the jury was left with her final words of tacit agreement that she did not act in self-defense. Bonner submits her entire defense was self-defense, and her counsel allowed her to testify contrary to her defense theory at the close of evidence in the case.

28.

**Law**

*Tactical Choices and Speculation*

{¶ 66} A defense attorney's decision at trial regarding whether to conduct redirect examination of a witness, and the extent of the questioning, is a tactical choice. *See State v. Likosar*, 9th Dist. Medina No. 03CA0063-M, 2004-Ohio-114, ¶ 26; *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶ 123. Hence, whether further questioning of a witness would have unearthed any useful information is a matter for speculation only. *State v. Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836, ¶ 125. Speculation is insufficient to establish the requisite prejudice in an ineffective assistance of counsel claim. *State v. Peterson*, 9th Dist. Summit No. 23434, 2007-Ohio-2091, ¶ 8. Further, vague speculation by an appellant as to what he would have said if called to testify, and how that would have affected the jury's verdict, is insufficient to establish ineffective assistance of counsel. *State v. Wiley*, 10th Dist. Franklin No. 03AP-340, 2004-Ohio-1008, ¶ 30, citing *Bradley*.

**Analysis**

{¶ 67} Upon review of Bonner's arguments and the applicable law, we find she has not met her burden of demonstrating that her trial counsel was ineffective for forgoing redirect examination of her. There are three bases for our finding.

29.

{¶ 68} First, we find Bonner's arguments are based on vague speculation that her counsel should have redirected her for clarification on the issue of acting in self-defense. Speculation is not sufficient to succeed on an ineffective assistance of counsel claim.

{¶ 69} Second, we find Bonner did not specifically claim nor did she demonstrate that she was prejudiced by her trial counsel's failure to call her to testify on redirect. Thus, we find Bonner failed to carry her burden of proving there was a reasonable probability that, but for counsel's conduct, the outcome of her trial would have been different.

{¶ 70} Third, we find Bonner failed to overcome the presumption that, under the circumstances, her counsel's choice not to call her on redirect may constitute a legitimate strategic trial decision.

**Third Claim - Failure to Object or Stipulate to Prior Domestic Violence Conviction**

{¶ 71} Bonner asserts that her trial counsel was ineffective for failing to object to the state's presentation of her prior domestic violence conviction, or stipulate to the prior domestic violence charge. Bonner argues this failing allowed the state to present testimony related to the prior conviction, and examine witnesses as to Bonner's propensity for violence, resulting in highly prejudicial evidence which would have otherwise been inadmissible pursuant to Evid.R. 404(B). Bonner further contends that evidence of other acts is to be construed against admissibility because the average person is apt to more readily believe that an accused is guilty of the crime charged if it is proven

30.

that the accused has committed a similar crime. She relies on *State v. Klaue*, 11th Dist. Ashtabula No. 2007-A-0046, 2007-Ohio-6933 and *State v. Hector*, 19 Ohio St.2d 167, 249 N.E.2d 912 (1969). She submits her counsel effectively deprived her of a fair trial.

{¶ 72} Bonner observes that the prejudice prong "'focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.' *Lockhart v. Fretwell*, 506 U.S. 364, 372[, 113 S.Ct. 838, 122 L.Ed.2d 180] (1993)." She maintains that counsel's errors, taken together, constitute ineffective assistance of counsel at trial.

**Law**

{¶ 73} Conclusory statements that the outcome of a trial would have been different, without more, are not adequate to carry a defendant's burden on the issue of prejudice. *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 95 (the defendant "does not allege any specific prejudice that befell him as a result of counsel's alleged ineffectiveness[,]" as the defendant's "argument is conclusory, and he has not even attempted to show prejudice under *Strickland*").

**Analysis**

{¶ 74} A review of Bonner's assertions reveals that they are insufficient to meet the required showing of the prejudice prong of *Strickland*. Bonner provides only conclusory statements that highly prejudicial evidence was admitted due to her counsel's conduct. Bonner does not indicate what particular evidence was highly prejudicial, nor

31.

does she delineate any specific prejudice that she suffered as a result of the admission of the highly prejudicial evidence.

{¶ 75} Since Bonner has not explained exactly what evidence was prejudicial or how she was prejudiced, we find she failed to carry her burden of proving there was a reasonable probability that, but for counsel's conduct, the outcome of her trial would have been different. Additionally, we find Bonner has not overcome the presumption that, under the circumstances, her counsel's decision not to object or stipulate to her prior domestic violence conviction may be considered sound trial strategy.

{¶ 76} Therefore, we conclude Bonner has not shown that her counsel's actions at trial deprived her of her right to effective assistance of counsel or a fair trial. Accordingly, Bonner's second assignment of error is not well-taken.

### Third & Fourth Assignments of Error

{¶ 77} Bonner argues her assault, domestic violence and burglary convictions are against the manifest weight of the evidence. She contends the state failed to prove she did not act in self-defense against L.A. or sister, nor could the state have proved that she did not act in self-defense when she re-entered the home. These assigned errors are related and will be addressed together.

{¶ 78} Bonner contends two of the state's witnesses at trial, L.A. and sister, were present for the events which created the bases for Bonner's indictments. Bonner asserts her version of events differed in meaningful ways from L.A. and sister, thus the versions

32.

must be reviewed to determine the believability of the evidence so a judgment can be made as to where the real weight of the trial testimony lies. Bonner argues the testimonies of L.A. and sister were vague, uncertain, fragmented, often conflicting and unreliable, since either or both of them could have been charged with assault and/or domestic violence against Bonner, had Bonner had the chance to call 911 first.

{¶ 79} Bonner highlights certain portions of her own testimony, sister's testimony and L.A.'s testimony, which include the following.

**L.A.'s Sister**

{¶ 80} Sister testified: she was asleep in her home on the morning of the incident when she woke up to Bonner kicking and banging on the door; sister opened the door, but did not let Bonner into the home; sister did not witness a fight between Bonner and L.A.; sister grabbed a bat, L.A. had a hammer; and Bonner forced her way into the home.

**L.A.**

{¶ 81} L.A. testified: she was woken up on the day of incident by Bonner; Bonner said she was about to leave, then she left the home; Bonner called L.A. and said she was coming back to the home; the couple argued outside of the home; Bonner followed L.A. back into the home; and Bonner forced her way into the home.

**Bonner**

{¶ 82} Bonner testified: on the morning of the incident she saw JPAY messages on L.A.'s phone and confronted her about them; Bonner went out to her car and L.A.

33.

followed; L.A. took Bonner's car keys, went onto the porch of the home, and the two had words; sister opened the front door; Bonner asked if she could come back into the home, sister agreed; Bonner was attacked by L.A., "who grabbed her hair, which started the 'tussling' around [the] house"; and Bonner believed she was permitted to re-enter the home so she could be jumped by either L.A. or sister, or both.

{¶ 83} Bonner submits that the testimonies of the three women, together with the body cam videos demonstrate mutual combat between the women. Bonner contends the videos clearly depicted sister pushing Bonner, Bonner pushing sister back, then L.A. approached Bonner from behind and Bonner grabbed L.A.'s hair.

{¶ 84} Bonner insists that with the conflicts in the women's testimonies and the jury finding her not guilty of aggravated burglary, the jury clearly did not believe she re-entered the home with the intent to commit a violent crime, so there was clearly a manifest miscarriage of justice warranting reversal and a new trial.

{¶ 85} Bonner claims the state failed to prove beyond a reasonable doubt that she did not act in self-defense against L.A. or sister, nor could the state have proved beyond a reasonable doubt that she did not act in self-defense when she re-entered the home.

**Law**

**Manifest Weight of the Evidence**

{¶ 86} In *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), the Supreme Court of Ohio set forth:

Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' (Citation omitted.)

{¶ 87} When analyzing a manifest weight of the evidence claim, 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' (Citation omitted.) *Id.*

{¶ 88} In determining whether a verdict is against the manifest weight of the evidence, the reviewing court sits as a "thirteenth juror." *Id.* A conviction on manifest weight grounds is only reversed in the most "'exceptional case in which the evidence weighs heavily against the conviction.'" (Citation omitted.) *Id.*

**R.C. 2903.13(A) and (C) - Assault**

(A) No person shall knowingly cause or attempt to cause physical harm to another * * *[.]

* * *

(C)(1) Whoever violates this section is guilty of assault, * * * [which] is a misdemeanor of the first degree.

**R.C. 2911.11(A)(1) and (B) – Aggravated Burglary**

(A) No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person * * * is present, with purpose to commit in the structure * * * if any of the following apply:

(1) The offender inflicts, or attempts or threatens to inflict physical harm on another[.]

* * *

(B) Whoever violates this section is guilty of aggravated burglary, a felony of the first degree.

**R.C. 2911.12(B) and (E) - Burglary**

(B) No person, by force, stealth, or deception, shall trespass in a permanent or temporary habitation of any person when any person * * * is present or likely to be present.

* * *

36.

(E) Whoever violates division (B) of this section is guilty of trespass in a habitation when a person is present or likely to be present, a felony of the fourth degree.

**R.C. 2901.05 – Self-Defense**

Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution. * * *

(B)(1) A person is allowed to act in self-defense * * *. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense * * * the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense * * *.

* * *

{¶ 89} To support a self-defense claim involving the use of non-deadly force, the accused must show: (1) she was not at fault in creating the situation giving rise to the fight; (2) she had reasonable grounds to believe, or an honest belief, that she was in imminent danger of bodily harm; and (3) she did not use more force than was reasonably necessary to defend herself against the imminent danger of bodily harm. *State v. Greer*, 6th Dist. Lucas No. L-22-1082, 2023-Ohio-103, ¶ 33.

37.

**{¶ 90}** In *State v. Johnson*, 6th Dist. Lucas No. L-08-1325, 2009-Ohio-3500, this court set forth certain limitations to the application of self-defense, including "'if the force is so grossly disproportionate to [the] apparent danger as to show revenge or an evil purpose to injure.'" (Citation omitted.) *Id.* at ¶ 12. This court also set forth that "[w]hen one uses a greater degree of force than is necessary under all the circumstances, it is not justifiable on the ground of self-defense." *Id.*

**{¶ 91}** In *State v. Messenger*, ___Ohio St.3d ___, 2022-Ohio-4562, ___ N.E.3d ___, the following question was posed to the Supreme Court of Ohio: "is the state's rebuttal of a defendant's claim of self-defense now subject to review under the sufficiency-of-the-evidence standard?" *Id.* at ¶ 1, 13. The court held "that it is not." *Id.* at ¶ 1.

**{¶ 92}** The court set forth the elements of a self-defense claim, *id.* at ¶ 14, then examined the current version of R.C. 2901.05, which became effective March 28, 2019, including the burden regarding self-defense set forth in R.C. 2901.05(B). *Id.* at ¶ 15.

**{¶ 93}** The *Messenger* court observed this change to the state's burden of persuasion did not change the elements of the offenses with which a defendant is charged. *Id.* at ¶ 24. Thus, the court found "[s]elf-defense remains an affirmative defense in Ohio, and an affirmative defense is not an element of a crime." *Id.*

**{¶ 94}** The *Messenger* court further found if a defendant is charged with an offense involving the use of force, and a self-defense claim is offered, the defendant "has

38.

the burden of producing legally sufficient evidence that the defendant's use of force was in self-defense." *Id.* at ¶ 25. "[I]f the defendant's evidence and any reasonable inferences about that evidence would allow a rational trier of fact to find all the elements of a self-defense claim when viewed in the light most favorable to the defendant, then the defendant has satisfied [the] burden [of production]." *Id.* at ¶ 21, 25. The burden of persuasion is on the state to disprove self-defense beyond a reasonable doubt. *Id.* at ¶ 26, 27. The question of whether or not the state has met this burden is subject only to a manifest-weight review on appeal. *Id.* at ¶ 27.

{¶ 95} Hence, "the sufficiency-of-the-evidence standard of review applies to [the defendant's] burden of production [that he was acting in self-defense] and a manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion [that the defendant was not acting in self-defense]." *Id.* at ¶ 26. *See also Toledo v. Duckworth*, 6th Dist. Lucas No. L-22-1126, 2023-Ohio-1412, ¶ 13.

**Analysis**

{¶ 96} We have reviewed the entire record and the relevant law, weighed the evidence and all reasonable inferences, and considered the credibility of all of the witnesses. We find the jury did not lose its way and create such a manifest miscarriage of justice such that that Bonner's convictions must be reversed and a new trial ordered.

{¶ 97} We note the jury had the opportunity, and was in the best position, to view the body cam videos and evaluate the credibility of all of the witnesses, including

39.

Bonner, L.A., sister, and Officer Greenawalt, and give the evidence and testimony its appropriate probative weight. Concerning the assault and domestic violence offenses, Officer Greenawalt testified that shortly after he arrived at the scene, Bonner grabbed L.A.'s head and hair, pulled L.A. out of the home, and refused to loosen her grip on L.A.'s hair. The officer recalled Bonner was not listening to verbal commands, so she was warned that pepper spray would be used. The officer testified that Bonner was taken to the ground, and Officer Blackford was able to peel her fingers from L.A.'s hair, so no pepper spray was needed.

{¶ 98} We also observe that Bonner's account of the events with respect to the videos describes sister pushing Bonner, Bonner pushing sister back, L.A. approaching Bonner from behind, and Bonner grabbing L.A.'s hair. However, our review of the videos shows Bonner stepping out of the doorway of sister's home, while sister pushes Bonner out of the home, Bonner slaps or punches or pushes sister, L.A. verbally confronts Bonner face-to-face, Bonner grabs L.A.'s hair and pulls L.A. to the ground.

{¶ 99} The jury was free to interpret the videos and accept Bonner's account of the events, but the jury was also free construe the videos and accept L.A., sister, and the officer's versions of events and determine that Bonner was trespassing in sister's home, Bonner was the original primary aggressor, and Bonner was not acting in self-defense.

40.

{¶ 100} Based upon our review of the record, we cannot say the jury clearly lost its way in deciding that Bonner was not the most credible witness. Accordingly, Bonner's third and fourth assignments of error are not well-taken.

**Fifth Assignment of Error**

{¶ 101} Bonner argues her convictions of assault and domestic violence violate her due process because the state's evidence at trial was constitutionally insufficient to sustain a conviction based on the standard of beyond a reasonable doubt.

{¶ 102} Bonner recognizes the current standard of review for challenging the state's burden regarding self-defense is manifest weight of the evidence, pursuant to *Messenger*. However, Bonner contends the Ohio Supreme Court has accepted review of "*State of Ohio v. Walker*, 2021-1421," on the issue of the "State's burden of production regarding self-defense." Bonner asserts "[i]f successfully challenged by the appellant in *Walker*, supra., [sic] this Court would then presumably have the authority pursuant to the Ohio Supreme Court to review Bonner's Assignment of Error wherein she challenges the State's burden of production as to the element of self-defense in count[] Two (2) * * * of Bonner's indictment."

**Law**

{¶ 103} In *State v. Walker*, 6th Dist. Lucas No. L-20-1047, 2021-Ohio-3860, 180 N.E.3d 60, ¶ 59, the appellant argued that under amended R.C. 2901.50, which sets forth a "newly-defined burden shifting analysis, this court must determine whether the state

introduced sufficient evidence not only to support the charged offenses but also to disprove his self-defense claim." This court found that its analysis should be limited to the elements of the charged offenses only, without regard to the self-defense claim. *Id.*

{¶ 104} This court recognized that "[u]nder the current version of R.C. 2901.05(B), the state is not required to prove the defendant did not act in self-defense until that defendant introduces evidence that tends to support they acted in self-defense. In other words, the defendant maintains the burden of production on their self-defense claim before the state inherits the burden of persuasion." *Id.* at ¶ 61. This court concluded that "because the burden of production for self-defense under R.C. 2901.05 remains with appellant, he cannot challenge his convictions based on the state's purported failure to introduce sufficient evidence disproving that defense." *Id.* at ¶ 62.

{¶ 105} The appellant appealed to the Supreme Court of Ohio, and the appeal was accepted. In *State v. Walker*, 170 Ohio St.3d 394, 2023-Ohio-652, 213 N.E.3d 693, the Supreme Court affirmed this court's judgment, on the authority of *Messenger*.

### Analysis

{¶ 106} Upon review, Bonner's fifth assignment of error is predicated on the Supreme Court reversing this court's *Walker* judgment. However, since the Supreme Court affirmed this court's judgment,[4] Bonner cannot challenge her conviction on the

---

[4] We note that the Supreme Court issued its decision in *Walker* on March 7, 2023, and Bonner's corrected amended brief was filed March 23, 2023. Notwithstanding, it is clear

42.

basis that the state allegedly failed to introduce sufficient evidence disproving that Bonner acted in self-defense.  Accordingly, Bonner's fifth assignment of error is not well-taken.

## Conclusion

**{¶ 107}** We find Bonner's assignments of error not well-taken, and we affirm the trial court's judgment.  Bonner is ordered to pay the costs of this appeal, pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Christine E. Mayle, J.                  _____

                                              JUDGE

Myron C. Duhart, P.J.            

                                          _____

Charles E. Sulek, J.                    JUDGE
CONCUR.

                                          _____

                                            JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

the *Walker* decision issued by the Supreme Court was not known to Bonner at the time her brief was filed.