[Cite as *State v. Hussein*, 2024-Ohio-2944.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo                    Court of Appeals No.  L-23-1075

    Appellee                               Trial Court No.  CRB-22-11692

v.

 Amin Talal Hussein                           **DECISION AND JUDGMENT**

    Appellant                              Decided:  August 2, 2024

* * * * *

Rebecca Facey, City of Toledo Prosecuting Attorney, and
Jimmie Jones, Assistant Prosecuting Attorney, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**DUHART, J.**

**{¶ 1}** This case is before the court on appeal by appellant, Amin Hussein, from the

September 15, 2023 judgment of the Toledo Municipal Court.  For the reasons that follow,

we affirm.

**Procedural History**

{¶ 2} On December 17, 2022, Hussein was arrested and booked at Lucas County Corrections Center. On December 19, 2022, Hussein pled not guilty to the charges of assault, in violation of R.C. 2903.13(A), a misdemeanor of the first degree, and, aggravated menacing, in violation of R.C. 2903.21(A), a misdemeanor of the first degree.

{¶ 3} A bench trial occurred on March 1, 2023. The trial court explained that the assault pertained to Hussein's actions against M.N. and the aggravated menacing charge applied to Hussein's actions against K.R. The court found Hussein guilty on both charges. Hussein's sentencing included 180 days in jail for each offense with all jail time suspended, one year of active probation, and the completion of a batterer's intervention program.

{¶ 4} This appeal followed the trial court's judgment.

**Statement of Facts**

{¶ 5} On December 17, 2022, Hussein's ex-girlfriend, M.N., invited Hussein to come over to her house after M.N and her friend, K.R., had attended a concert. All three parties involved (M.N., K.R., and Hussein) have different accounts of the events that took place following Hussein's arrival at the house. All parties do agree that the events took place at M.N.'s house, an argument about M.N. and Hussein's relationship took place, and a gun was involved in the incident. The following is a summary of the parties' recollection of the incident at issue.

2.

*M.N.*

{¶ 6} According to M.N.'s trial testimony, she and Hussein began to argue about "our relationship and stuff like that." The conversation eventually turned to the topic of Hussein wanting a sexual threesome with M.N. and K.R.; M.N. refused. M.N. then told Hussein that she began romantically seeing another person. After hearing this information, Hussein slapped M.N. across the face. M.N. explained how her response to such abuse was to "shut down." After slapping M.N. in the face, Hussein ran up to M.N.'s room and got her gun. Hussein came back downstairs with the gun. At this point, Hussein, M.N., and K.R. were all in the kitchen. Hussein was yelling at K.R. and M.N. was in a kneeling position, staring at the floor, and pleading with Hussein to give her the gun back. While in that position, M.N. heard Hussein loading bullets into the chamber of the gun and then bullets dropping to the kitchen floor as he unloaded the bullets. Eventually, Hussein gave M.N. the gun back and ran from the house.

{¶ 7} M.N. denied that she or K.R. had used ecstasy.

*K.R.*

{¶ 8} According to K.R.'s testimony, M.N. and Hussein were engaged in a conversation about their relationship. The conversation turned into an argument when the topic of a sexual threesome was brought up. After M.N. eventually explained that she was seeing someone else romantically, Hussein slapped M.N. across the face. M.N. was then on the floor "rocking back and forth" as Hussein was screaming at M.N. Hussein and M.N., according to K.R., engaged in the argument for about two hours. During the

3.

course of that two hours, Hussein called M.N. names and slapped M.N. "about six more times."

{¶ 9} Eventually, K.R. was in the kitchen when Hussein walked in and put a gun to K.R.'s head. Hussein told K.R. that she needed to get on her knees and submit to him. Hussein held the gun to K.R.'s head for "approximately five minutes." Hussein then began to load and unload bullets from the gun. K.R. said, "Like pulling something back, and bullets are falling on to the floor."

{¶ 10} Hussein then put the gun to his own head and K.R. pleaded with Hussein not to take his own life. Hussein eventually put the gun down and left.

{¶ 11} K.R. also denied using any drugs, including ecstasy.

*Hussein*

{¶ 12} According to Hussein's testimony, shortly after he arrived at M.N.'s house, both M.N. and K.R. were "fawning" over him. Both M.N. and K.R. were under the influence of ecstasy and they offered Hussein ecstasy.

{¶ 13} At some point M.N. was complaining to K.R. that Hussein did not love her, so Hussein got on his hands and knees and was "crying professing [his] love to her."

{¶ 14} K.R. then put a knife to Hussein's stomach and walked into the kitchen with the knife. Hussein followed K.R. into the kitchen and K.R. said to Hussein, "you should just do the world a favor and kill yourself."

{¶ 15} Hussein walked upstairs and grabbed M.N.'s gun. He then came downstairs and put the barrel of the gun in his own mouth and told K.R. to "pull the

4.

trigger." Hussein explained how as he went to cock the gun back, a bullet "flew out" due to a round already being in the chamber. Hussein took the gun out of his mouth, unloaded the gun, and left the house.

{¶ 16} He stated that he never slapped M.N., and he never held a firearm to K.R.

## Assignments of Error

{¶ 17} Hussein asserts the following assignments of error on appeal:

I.      [Hussein's] conviction for assault was not supported by the manifest weight of the evidence.

II.     [Hussein's] conviction for aggravated menacing was not supported by the manifest weight of the evidence.

III.    [Hussein] was denied effective assistance of counsel when counsel did not move for acquittal pursuant to Criminal Rule 29 at the close of the State's case, nor at the close of all testimony.

## First Assignment of Error

{¶ 18} Hussein argues that the assault conviction is against the manifest weight of the evidence and was not proven beyond a reasonable doubt. Specifically, Hussein argues the fact that M.N. and K.R.'s testimony differed as to the number of times Hussein slapped M.N., coupled with Hussein's testimony where he denied slapping M.N. warrants a reversal of the conviction.

5.

*Law*

{¶ 19} Hussein was charged and convicted of assault, in violation of R.C. 2903.13(A) which states, "No person shall knowingly cause or attempt to cause physical harm to another or another's unborn."

{¶ 20} The Supreme Court of Ohio set forth in *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997) that manifest weight is "not a question of mathematics but depends on its effect in inducing belief." The reviewing court, when analyzing a manifest weight of the evidence claim, "weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered." *Id.,* quoting *State v. Martin*, 20 Ohio App.3d 172 (1st Dist. 1983). In determining whether a conviction is against the manifest weight of the evidence, we do not view the evidence in a light most favorable to the state. Instead, we sit as a "thirteenth juror" and scrutinize "the factfinder's resolution of the conflicting testimony." *Id.* A reversal of a conviction based on manifest weight of the evidence grounds will only occur in the most exceptional of cases. *State v. Bonner*, 2023-Ohio-4003, ¶ 88 (6th Dist.).

*Relevant Testimony*

{¶ 21} According to M.N.'s testimony, she recalls being slapped one time after she revealed to Hussein that she was romantically involved with another person. M.N.

6.

explained that once she was hit, it was her response to "shut down" until the altercation was over.

{¶ 22} K.R. similarly testified that Hussein slapped M.N. across the face after M.N. revealed her romantic relationship with another person. K.R. also said that Hussein hit M.N. six additional times during the argument between Hussein and M.N.

{¶ 23} Hussein denied ever hitting M.N. and further stated that both of the women were under the influence of drugs.

*Analysis*

{¶ 24} After review of the entire record, weighing of all the evidence, and considering the credibility of all witnesses, we find the fact finder did not lose its way nor create a miscarriage of justice as it pertains to the assault conviction.

{¶ 25} The trial court had the opportunity to give the evidence and testimony of the parties the amount of probative weight necessary to issue a verdict. There was trial testimony supporting the finding that Hussein caused physical harm to M.N. The trial court found that M.N. and K.R.'s testimony was more effective in inducing belief and found Hussein's testimony to not be credible.

{¶ 26} We find that Hussein's argument that the assault conviction was not proven beyond a reasonable doubt due to a disparity in the testimony does not fall within the "most exceptional of cases" as the court merely found M.N. and K.R. to be more credible than Hussein. Accordingly, Hussein's first assignment of error is not well-taken.

7.

## Second Assignment of Error

{¶ 27} Hussein argues that his conviction for aggravated menacing is against the manifest weight of the evidence and was not proven beyond a reasonable doubt. Specifically, Hussein argues that the evidence is disputed as to whether Hussein, once the firearm was involved, threatened K.R. or just his own life. Hussein argues that due to the testimony being disputed and his testimony that he was only threatening harm to himself, his conviction for aggravated menacing should be reversed.

### *Law*

{¶ 28} Hussein was charged and convicted of aggravated menacing, in violation of R.C. 2903.21(A), which states, "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person . . ."

### *Relevant Testimony*

{¶ 29} M.N. testified that once Hussein had the gun in his possession, he would load and unload bullets from the gun, and the bullets would fall to the floor. M.N. said, "So he was loading the bullets into the chamber multiple times. And then the bullets were dropping on the ground."

{¶ 30} Similarly, K.R. described the incident with Hussein in possession of the gun, "Like pulling something back, and bullets are falling on to the floor… And I'm thinking this gun is accidentally going to go off, and I'm going to die here." K.R. testified that Hussein put the gun to K.R.'s head while both K.R. and Hussein were in the kitchen of the home.

8.

**{¶ 31}** Hussein testified that the incident led to K.R. holding a knife to Hussein's stomach. Additionally, Hussein explained that he put the barrel of the gun into his mouth and told K.R. to pull the trigger. Hussein denies hitting either of the two women and denies threatening the lives of anyone but himself.

*Analysis*

**{¶ 32}** After review of the entire record, weighing all the evidence, and considering the credibility of all witnesses, we find the fact finder did not lose its way nor create a miscarriage of justice as it pertains to the aggravated menacing conviction.

**{¶ 33}** The court here found Hussein guilty of aggravated menacing beyond a reasonable doubt. We find, based on the record, applicable law, and relevant testimony, that the court here did not clearly lose its way. There was evidence in the record that Hussein caused K.R. to believe that he would cause her serious physical harm. The court chose to find M.N. and K.R.'s testimony more credible than Hussein's.

**{¶ 34}** Accordingly, Hussein's second assignment of error is not well-taken.

**Third Assignment of Error**

**{¶ 35}** Hussein argues that he was denied effective assistance of counsel because his counsel did not move for an acquittal under Crim.R. 29 at the close of the State's case. Specifically, Hussein argues that the failure to make a Crim.R. 29 motion fell below the objective standard of effective counsel. Additionally, Hussein argues that failure to make the motion prejudiced Hussein and the outcome of the case.

9.

*Law*

{¶ 36} The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), set forth a two-prong test for evaluating the claim of ineffective assistance of counsel:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

{¶ 37} Additionally, the Ohio Supreme Court explained in *State v. Bradley*, 42 Ohio St.3d 136 (1989), to establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 142, citing *Strickland.*

{¶ 38} This court has addressed the question of whether failure to make a Crim.R. 29 motion is indicative of counsel's performance falling below the reasonable standard of representation. In *State v. Scott*, 2003-Ohio-2797, ¶ 21 (6th Dist.), we explained that while it is common that counsel would move for a Crim.R. 29 motion at the close of the State's case, failure to do so does *not* mean the performance of the counsel fell below the reasonable standard.

*Analysis*

**{¶ 39}** Upon review of the record, we find that Hussein failed to satisfy the two-prong test under *Strickland*.

**{¶ 40}** The first prong of *Strickland* calls for counsel's performance falling below the reasonable standard of representation. However, as previously stated, the mere failure to move for a Crim.R. 29 motion has been established as not sufficient for a successful ineffective assistance of counsel claim, if the motion would have been meritless.

**{¶ 41}** Moving to the second prong of *Strickland*, it cannot be said that defense counsel's failure to make a Crim.R. 29 motion in any way prejudiced Hussein or the outcome of the case. "A trial court can only grant a Crim.R. 29 motion for acquittal when, construing the evidence most strongly in favor of the prosecution, the evidence is insufficient to sustain a conviction." *State v. Sandifur*, 2024-Ohio-2414, ¶ 47 (6th Dist.), citing *State v. Grate*, 2020-Ohio-5584, ¶ 146. Here, there was sufficient evidence presented to the trial court to support both convictions. We have fully discussed this evidence above. The trial court just found M.N. and K.R. more reliable and credible than Hussein. As there was sufficient evidence presented at trial to support the convictions, we do not find Hussein was prejudiced by the trial counsel's failure to make a Crim.R. 29 motion. We further do not find it to be ineffective assistance of counsel as such a motion would be meritless.

**{¶ 42}** Accordingly, Hussein's third assignment of error is not well-taken.

11.

## Conclusion

**{¶ 43}** The judgment of the Toledo Municipal Court is affirmed. Pursuant to

App.R. 24, Hussein is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.

Gene A. Zmuda, J.          _____
                                               JUDGE

Myron C. Duhart, J.

                                        _____
Charles E. Sulek, P.J.                             JUDGE
CONCUR.

                                        _____
                                               JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.