[Cite as *State v. Sowards*, 2025-Ohio-2831.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

TINA JO SOWARDS,

    DEFENDANT-APPELLANT.

CASE NO. 14-24-43

OPINION AND
JUDGMENT ENTRY

---

Appeal from Union County Common Pleas Court
Trial Court No. 2024-CR-0032

Judgment Affirmed

Date of Decision: August 11, 2025

---

APPEARANCES:

    *Alison Boggs* for Appellant

    *Andrew M. Bigler* for Appellee

**WALDICK, P.J.**

{¶1} Defendant-appellant, Tina Jo Sowards ("Sowards"), brings this appeal from the October 17, 2024 judgment of the Union County Common Pleas Court sentencing her to community control after she was convicted of Domestic Violence in a bench trial. On appeal, Sowards argues that she received ineffective assistance of trial counsel. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{¶2} On February 2, 2024, Sowards was indicted for Domestic Violence in violation of R.C. 2919.25(A)/(D)(3), a fourth degree felony due to Sowards having a prior conviction. It was alleged that Sowards struck her cousin, Larry P. ("Larry"), with closed and open hands in the ribs and in the face. Sowards and her son lived in the same residence as Larry and the altercation occurred at that residence. Sowards pled not guilty to the charge and filed a notice of self-defense pursuant to Crim.R. 12.2.

{¶3} A bench trial was held on September 6, 2024. At trial, Larry testified that on the date of the alleged incident both he and Sowards were attending the funeral viewing/visitation of their grandmother at a funeral home in Plain City. Larry testified that during the calling hours, Sowards got into a heated argument

with a female cousin. Larry tried to pull Sowards away from the situation, but he eventually gave up and went around her and left.

{¶4} Larry testified that he then walked to a local bar and had some drinks. While he was at the bar, Sowards called him and was still "ranting" about the incident at the funeral home. During the call, Sowards arrived at the local bar with her friend. Shortly thereafter, Larry left.

{¶5} Larry testified that he met his brother, Gary, and they went to get liquor and cigarettes from the store. Afterward, Larry and Gary returned to Larry's residence and went to the garage area where Larry worked on vehicles.

{¶6} While Larry was in his garage, Sowards again called Larry's phone and she was still "carrying on something fierce." (Tr. at 28). Larry testified that he could hear Sowards through the phone and from outside the garage because Sowards had returned to the residence. Larry testified that Sowards approached him "hollering and screaming at [him] about knowing where [his] loyalties lie now." (*Id*. at 30). He testified that Sowards continued to yell at him and that while she was doing that, she punched him repeatedly in the ribs.

{¶7} Larry testified that he verbally argued with Sowards and asked her why she was hitting him. He testified that she continued striking him, including in areas that were sore from a fall he had taken a couple nights prior. Larry testified he told Sowards to stop hitting him because it hurt, but Sowards did not stop. Larry testified that when Sowards prepared to throw "another jab" he stuck his hand out and

stopped the punch, but Sowards "came over the top with her right hand straight to [Larry's] forehead and just clawed and ripped [him] down the face." (Tr. at 33).

{¶8} Larry testified that he put his hands out to push Sowards away and they both instantly went to the ground on the patio with Larry on top. Larry testified that he tried to get up while Sowards was still punching him, but there was a pressure on his back holding him down and he thought Sowards's friend, who had been with her throughout the day, was holding him down. Seconds later, Sowards's son Brian put Larry in a headlock from behind and was choking him and wrenching his neck sideways. Larry testified that Brian was twisting his neck so hard that Larry thought Brian was going to break Larry's neck.

{¶9} Neither Larry nor Sowards called the police on the night of the incident, though Sowards told Larry that she was going to call the police. Larry testified that he eventually went and contacted the police on January 29, 2024. Larry had photographs of scratches and bruising on his face. He testified that the injuries were not from his fall several days prior to the incident.

{¶10} Larry's brother Gary also testified at trial. Gary testified that he was present at the time of the incident; however, he testified that when Sowards returned home with her friend and was "ranting and raving" Gary wanted to leave. Gary testified that Sowards started making threats and talking about "loyalties." Gary testified that he walked out the side of the garage and back to his truck. Gary testified

he heard Larry saying "why are you hitting me? Quit hitting me. Several times." (Tr. at 54).

{¶11} Gary testified that when he walked back around the garage he saw Brian with Larry in a chokehold. Gary testified that he broke up the altercation. Gary testified definitively that Larry did not have the injuries to his face prior to the altercation with Sowards.

{¶12} Multiple law enforcement officers testified at trial. Sowards spoke with one of the officers and stated that Larry had actually punched her in the eye 4-5 times with a closed fist. Sowards also claimed that Larry fell to the ground on top of her, put his hands around her neck and started strangling her. She stated that Larry also repeatedly slammed her head into the ground. The officer testified that he checked Sowards's head but he did not see any injuries. A certified copy of a judgment entry related to Sowards's prior domestic violence conviction was entered into evidence. The State then rested its case.

{¶13} The defense presented the testimony of six witnesses. Liz S., Sowards's friend, testified that she was with Sowards on the day of the incident. She testified that she observed injuries to Larry's face prior to the altercation.

{¶14} Liz testified that at the time of the altercation, Sowards and Larry were both yelling. Liz testified that she thought Larry stumbled on the pavement and fell onto Sowards, but afterward she saw Larry with his hands around Sowards's throat. Liz testified that Larry was saying "you're not going to hit me" repeatedly, but at

that time Sowards was not trying to hit him. Liz testified that she yelled and shortly thereafter Sowards's son Brian came down and pulled Larry off of Sowards.

{¶15} Brian testified that he heard a commotion outside from his upstairs bedroom. He testified that he came down and saw Larry choking his mother, so he pulled Larry off of her.

{¶16} Brian's girlfriend was present at the time as well. She came outside and saw Larry on top of Sowards but she stated it was too dark to see much else.

{¶17} The defense presented testimony from two other witnesses who testified that prior to the funeral Larry had injuries on his face from his fall. However, on cross-examination the witnesses indicated that the scuffs were mainly on one side of Larry's face, whereas the photographs in evidence showed injuries on both sides of his face.

{¶18} Sowards then testified in her own defense, stating that Larry struck her first. She testified that Larry choked her until she passed out and she awakened with Larry still strangling her. She testified that she did not recall punching Larry, but she did recall scratching him. She was adamant that Larry struck her first and she acted in self-defense.

{¶19} The trial court ultimately found Sowards guilty as charged. After a pre-sentence investigation was conducted, Sowards was sentenced to five years of community control. A final judgment entry memorializing Sowards's sentence was

filed October 17, 2024. It is from this judgment that Sowards appeals, asserting the following assignment of error for our review.

**First Assignment of Error**

**Appellant was denied the effective assistance of counsel during her trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.**

{¶20} In her assignment of error, Sowards argues that she received ineffective assistance of trial counsel.

Standard of Review

{¶21} To establish ineffective assistance of counsel, the appellant "must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Tench*, 2018-Ohio-5205, ¶ 264. "Reversal of a conviction or sentence based upon ineffective assistance of counsel requires satisfying this two-pronged test, and the failure to make either showing is fatal to the claim." *State v. Radabaugh*, 2024-Ohio-5640, ¶ 51 (3d Dist.), citing *State v. Conway*, 2006-Ohio-791, ¶ 165, 168.

{¶22} Regarding the first requirement, "[i]n order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that

counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment." *State v. Houston*, 2010-Ohio-6070, ¶ 35 (3d Dist.), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[T]he errors complained of must amount to a substantial violation of counsel's essential duties to his client." *Id.* at ¶ 36.

{¶23} Regarding the second requirement, "[p]rejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Houston* at ¶ 36, quoting *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.*, quoting *Bradley* at 142.

Analysis

{¶24} In her assignment of error, Sowards cites numerous instances where she believes her trial counsel was ineffective. She also argues that even if no single instance of ineffective counsel was sufficient enough to deprive her of a fair trial, the cumulative impact of counsel's errors deprived her of a fair trial. We will address the alleged errors in turn.

{¶25} Sowards first contends that trial counsel was ineffective for not conducting re-direct examination of Sowards and some of the other witnesses presented in the defense's case-in-chief. Case authority establishes that Sowards is

unable to demonstrate that her counsel's performance was deficient for failing to conduct re-direct examination. Further, there is no established prejudice.

**{¶26}** "A defense attorney's decision at trial regarding whether to conduct redirect examination of a witness, and the extent of the questioning, is a tactical choice." *State v. Bonner*, 2023-Ohio-4003, ¶ 66 (6th Dist.); *State v. Hanna*, 2002-Ohio-2221, ¶ 123. "Hence, whether further questioning of a witness would have unearthed any useful information is a matter for speculation only." *Id*. citing *State v. Foust*, 2004-Ohio-7006, ¶ 125. Speculation is insufficient to establish the requisite prejudice in an ineffective assistance of counsel claim. *Id*. Further, vague speculation by an appellant as to what she would have said if called to testify, and how that would have affected a verdict, is insufficient to establish ineffective assistance of counsel. *Id*., citing *State v. Wiley*, 2004-Ohio-1008, ¶ 30. Thus Sowards's argument is not well-taken.

**{¶27}** Next, Sowards argues that her trial counsel was ineffective for failing to cross-examine Larry's brother, Gary. Again, the decision whether to cross-examine a witness is a matter of trial strategy "firmly committed to trial counsel's judgment." *State v. Berry*, 2021-Ohio-1132, ¶ 125. Notwithstanding this point, Gary specifically did not see how the altercation began; rather, he only overheard Larry stating that Sowards should stop hitting him. If defense counsel had cross-examined Gary on what he recalled, the prosecution would have been able to clarify any specific points on re-direct that were confusing. Trial counsel's decision appears to

fall firmly within trial tactics. We find no deficiency here and no demonstrable prejudice.

**{¶28}** Sowards next argues that her counsel was ineffective for failing to object to photographs that she contends were not provided in discovery. However there is no indication in the record that the photographs were not provided in discovery or that defense counsel was unaware of them. The only relevant discussion of the photographs occurred during the following segment:

> Q. [Prosecutor]: I'm going to ask you to pause for just one second. I'm going to show you what's been marked State's Exhibits 1, 2, and 3.
>
> [Prosecutor]: Your Honor, just for purposes of the record, I've showed [defense counsel] my exhibits prior to coming on the record, so. So if you've indicated, I don't need to show you –
>
> [Defense Counsel]: No. You're good.
>
> [Prosecutor]: You've looked at everything –
>
> [Defense Counsel]: Yeah. You're good with me.

(Tr. at 22).

**{¶29}** Nowhere in the preceding segment does defense counsel indicate the photographs had not been provided in discovery or that the defense was unaware of them. Moreover, the three photographs were merely of the area where the altercation took place, which was repeatedly discussed by the witnesses. We find no error here and no demonstrable prejudice.

**{¶30}** Sowards next contends that her trial counsel was ineffective for withdrawing a question when the prosecutor objected and for failing to make an argument against other objections. However, in the objection cited by Sowards in her brief, the trial court ruled on the prosecutor's objection *immediately*, leaving no time for defense counsel to respond. We see no deficiency here and Sowards does not even develop an argument establishing prejudice. *See State v. Tucker*, 2024-Ohio-516, ¶ 11 (3d Dist.) (indicating we will not fashion an argument for appellant).

**{¶31}** Sowards next contends that her trial counsel was deficient for failure to object to hearsay during Gary's testimony. However, she does not develop an argument as to how Gary's statements did not fit any exceptions to the hearsay rule and she does not establish how Gary's statements were prejudicial, particularly given that they were cumulative to the testimony of Larry. Moreover, it is well settled that a failure to object is generally viewed as trial strategy and does not establish ineffective counsel. *State v. Turks*, 2009-Ohio-1837, ¶ 43 (3d Dist.). Sowards's argument is thus not well-taken.

**{¶32}** Sowards next argues that trial counsel was deficient for failing to object to the prosecutor "badgering" his witnesses on cross-examination. Again, the decision of whether to object is viewed as trial strategy. Further, in this instance, the trial court actually admonished the prosecutor for getting a "little bit argumentative" with a witness. We see no error here or demonstrable prejudice.

**{¶33}** Without setting forth a separate assignment of error, Sowards turns her attention to "Instance of ineffectiveness: Prosecutorial misconduct examples[.]" She then cites several instances where she believes the prosecutor was being condescending with witnesses or "improperly" engaging in direct conversation with defense counsel. She claims her counsel was ineffective for failing to object to the prosecutor's comments.

**{¶34}** There are several issues with Sowards's argument, beginning with the fact that this was a bench trial, wherein the trial court is presumed to consider only relevant, material, and competent evidence. *State v. Bentz*, 2017-Ohio-5483, ¶ 132 (3d Dist.). Given that the trial court interrupted the prosecutor at one point to tell him he was being argumentative, the trial court was clearly monitoring the situation. Second, it could certainly be a sound trial strategy to let opposing counsel be condescending, if that is what he is doing. Third, there is no indication that any issue undermined the integrity of the trial. We see no error here, let alone prejudicial error.

**{¶35}** Finally, Sowards contends that trial counsel was simply "not familiar with all the facts" such that he could not present an effective self-defense claim. This argument is an entirely unfair characterization of defense counsel's work. Defense counsel presented many witnesses. Defense counsel developed the theory that Sowards was acting in self-defense. Defense counsel highlighted the fact that Larry's chief witness other than himself, his brother Gary, did not see the beginning

of the physical altercation. Defense counsel also presented multiple witnesses who testified that Gary was already injured to some degree before the altercation.

**{¶36}** The record before us simply does not reflect that trial counsel was unprepared or inexperienced. The case was thoroughly defended. Defense counsel being unsuccessful is not a suitable grounds for reversal, particularly in a bench trial where the trial court could directly see and hear the witnesses.

**{¶37}** In sum, we do not find that defense counsel was deficient or that there was any prejudice from any alleged deficiencies. Therefore, Sowards's assignment of error is overruled.

*Conclusion*

**{¶38}** Having found no error prejudicial to Sowards in the particulars assigned and argued, her assignment of error is overruled and the judgment of the Union County Common Pleas Court is affirmed.

*Judgment Affirmed*

**MILLER and WILLAMOWSKI, J.J., concur.**

Case No. 14-24-43

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignment of error is overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered.  The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  See App.R. 30.


|                                              |
| -------------------------------------------- |
| Juergen A. Waldick, Judge                    |


|                                              |
| -------------------------------------------- |
| Mark C. Miller, Judge                        |


|                                              |
| -------------------------------------------- |
| John R. Willamowski, Judge                   |

DATED:
/jlm